**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**ROBERT M. McCARDLE** and
**NANCY R. McCARDLE,**

        Plaintiffs,

v.

        **CIVIL ACTION NO. 5:19-CV-143**
        Judge Bailey

**XCL MIDSTREAM OPERATING, LLC**
and **PRICE GREGORY INTERNATIONAL,**
**INC.,**

        Defendants.

### MEMORANDUM OPINION AND ORDER REGARDING
### CROSS MOTIONS FOR SUMMARY JUDGMENT

Currently pending before this Court are Plaintiffs' Motion for Partial Summary Judgment on Certain Breach of Contract Issues [Doc. 87], Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [Doc. 88], and Defendant Price Gregory International, Inc. Motion for Summary Judgment [Doc. 91], all filed February 14, 2022.

Having been briefed at length, the pending Motions for Summary Judgment are ripe for adjudication.

### BACKGROUND

As this Court has previously stated:

This case arises out of a dispute over an oil and gas pipeline which crossed plaintiff's property in Marshall County, West Virginia. As alleged in the Complaint, defendant XCL Midstream wished to build a pipeline across plaintiffs' property and entered negotiations with them for a right-of-way

1

agreement.  Defendant Price Gregory, was retained to conduct the actual construction across the property, and plaintiffs' allege that the work done by Price Gregory caused substantial damage to the land, including causing multiple earth slippages.  Plaintiff brought suit on April 5, 2019, alleging multiple causes of action including trespass, breach of contract and property damage.

[Civ. Act. No. 5:19-CV-143 Doc. 67 at 1–2].

More specifically, the Complaint alleges five counts:  Count I - Declaratory Judgment and Quiet Title; Count II - Preliminary Injunction; Count III - Trespass; Count IV - Breach of Contract; and Count V - Property Damage.  *See* [Doc. 1 at 4–7].

There are eight (8) separate areas of plaintiffs property (hereinafter "the McCardle Property") for which they seek damages.  The eight (8) separate areas are as follows: Area 1 - Shutler Lane Culvert; Area 2 - Shutler Land Slide; Area 3 - Slope Failure Adjacent to Shutler Lane; Area 4 - Slope Failure below Home and Tractor Shed; Area 5 - Slope Failure near Old Barn; Area 6 - Failure of Hillside Opposite of Old Barn; Area 7 - Failures around Fish Creek Hillside; and Area 8 - Failures around Whetstone & White Oak Tree Area.  *See* [Doc. 91-4 at 1–2].

The claims asserted against Defendant Price Gregory International, Inc. (hereinafter "Defendant PGI") pertain to work performed by Defendant PGI on various parcels of the McCardle Property for purposes of the installation of a gas pipeline for Defendant XCL Midstream Operating, LLC (hereinafter "Defendant XCL").  Defendant XCL and plaintiffs entered into various agreements and contracts for purposes of the installation of the

pipeline at issue including a Right-of-Way and Easement Agreement[1] (hereinafter "the Perpetual ROW Agreement") and a Temporary Road Right-of-Way Agreement[2] (hereinafter ("the Temporary ROW Agreement").  *See* [Doc. 1].  Defendant PGI was not a party to any of these contracts.  *See* [Id.].

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See **Celotex Corp. v. Catrett**,* 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  ***Anderson v. Liberty Lobby, Inc.**,* 477 U.S. 242, 248 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  ***Id.***  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  ***Id.*** at 250.

---

[1] This Agreement can be found multiple times within the parties pleadings.  For example, it can be found in Document 90-3.

[2] This Agreement can be found multiple times within the parties pleadings.  For example, it can be found in Document 88-3.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations omitted).  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

When cross-motions for summary judgment are before a district court, as here, the same standards of review are applied.  *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983).  Each motion must be considered individually on its own merits, and the facts relevant to each must be viewed in the light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003) (citing *Rossignol v. Voorhaar*, 316

F.3d 516, 523 (4th Cir. 2003)).  When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion.  *Rossignol*, 316 F.3d at 523 (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## CROSS MOTIONS FOR SUMMARY JUDGMENT

I.    **Plaintiffs' Motion for Partial Summary Judgment on Certain Breach of Contract Issues [Doc. 87 and 87-1]**

The above-styled litigation consists, in part, of a breach of contract action by plaintiffs against Defendant XCL.  With respect to those claims, plaintiffs and Defendant XCL entered into the Perpetual ROW Agreement and the Temporary ROW Agreement that allowed Defendant XCL and its contractor, Defendant PGI, to install two 24" natural gas pipelines across an area of the McCardle Property.  *See* [Doc. 90-3].

In its Motion, plaintiffs assert that Defendant XCL has not "lived up to its contractual obligations" as to eight (8) separate areas of the McCardle Property.  *See* [Doc. 87 at 1]. Plaintiffs argue that Defendant XCL disputes its responsibility for six (6) of those areas but concedes that two (2) of the areas require additional measures to restore the McCardle Property to as near as practicable to its pre-construction condition.  *See* [Id.].  Plaintiffs now move for partial summary judgment on the issue of Defendant XCL's breach of contract as to those two (2) areas.

Plaintiffs argue that there are eight (8) distinct areas on the McCardle Property that still show "the dramatic effects of the work that XCL and its contractors performed."  *See* [Doc. 97-1 at 4].  These areas are identified in Mr. McCardle's deposition.  *See* [Doc. 90-1 at 4–40].  Plaintiffs state that defendants deny responsibility for conditions that exist in

Areas 1–6, but concede as follows:  "Exponent concludes that two areas identified by Plaintiffs (Areas 7 and 8) require additional measures to restore Plaintiffs' property as near as practicable to its pre-construction conditions."  *See* [Doc. 90-6 at 4].  In further support, plaintiffs state that defense expert David Sykora "acknowledged this portion of the Exponent report, described the conditions referenced therein, and identified the photographs that display this image."  *See* [Doc. 90-7 at 2–6]

The following two (2) terms of the ROW Contract are at issue:

9.  **EROSION CONTROL**.  Grantee shall construct the Permanent Right-of-Way in a manner that would minimize the risk of soil erosion.  Any related surface reclamation shall be done in a manner that restores any areas disturbed by Grantee's construction activities to the condition, as closely as reasonably practical, that existed immediately prior to Grantee's construction activities.  Water bars are to be removed from all fields after restoration of the Right-of-Way.

. . .

19. **RESTORATION WARRANTY**. Upon completion of construction activities on said land, Grantee shall restore the surface of said lands to as near its original condition as reasonably practical.  Grantee agrees that any settling that occurs within two (2) years after completion of construction activities or subsequent installations, repairs removed shall be repaired and reclaimed to as near as practicable.  No stumps, brush, nor debris are to be left on the Right-of-Way.

[Doc. 90-3 at 8 & 10].  Because plaintiffs argue there is no dispute that Defendant XCL has not restored Areas 7 and 8 in accordance with the Perpetual ROW Agreement, plaintiffs move for partial summary judgment.

### a.    Defendant XCL Midstream Operating, LLC's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment [Doc. 95]

On March 7, 2022, Defendant XCL filed its Memorandum in Opposition, arguing that there has been no such concession that Defendant XCL breached the contract as to Areas 7 and 8 of the McCardle Property.  Defendant XCL states that plaintiffs Motion for Partial Summary Judgment "is based entirely on an inference Plaintiffs seek in their favor - to which they are not entitled at summary judgment - from *one sentence* in *Defendants'* expert report that said report expressly cautions the reader not to make."[3]  *See* [Doc. 88-8].  The one sentence plaintiffs rely on and that Defendant XCL argues the plaintiffs "completely misinterpreted and t[ook] out of context" reads: "Exponent concludes that two areas identified by Plaintiffs (Areas 7 and 8) require additional measures to restore Plaintiffs' property as near as practicable to its pre-construction conditions."  *See* [Id. at 12].  Defendant XCL argues that plaintiffs "fail to appreciate that simply because certain areas of the nearly 400-acre Property may have changed in the nearly four years since construction began does not automatically equate them to being construction related nor draw the conclusion that XCL has breached its contractual obligations even if they are. . . ."  *See* [Doc. 95 at 6].  Defendant XCL states that plaintiffs ignored the testimony of

---

[3] Below the one sentence at issue, the Exponent Report states: "Note that this Executive Summary does not contain all of Exponent's technical evaluations' analyses, conclusions, and recommendations.  Hence, the main body of this report is at all times the controlling document."  *See* [Doc. 88-8 at 12].

Defendant XCL's corporate representative stating that "the recent issues like those in Plaintiffs' Motion are due to 'heavy rains and freeze thaw cycles.'"[4] *See* [Doc. 88-5 at 62:18–63:15].[5] Defendant XCL also asserts that the one sentence plaintiffs rely on does not provide an "explanation as to *why* such additional measures are required" and "does not concede that Areas 7 and 8 were damaged as a result of" Defendant XCL's actions or omissions.

However, the Exponent Report does point out that Area 7 "has a few areas of slippage that appear to have occurred within the past few weeks." *See* [Doc. 88-8 at 25]. Defendant XCL states that this is "well after primary pipeline installation was completed and several months after restoration has occurred, but well within the 2-year period during which XCL may timely address such areas to the extent required." *See* [Doc. 95 at 8]. But, Defendant XCL makes it clear that the Exponent Report does not conclude, nor concede, that the current property condition is due to construction and work done by Defendant XCL or Defendant PGI.

Moreover, as to Area 8, the Exponent Report states that runoff and sedimentary debris in the creek bed "naturally occurs" and Area 8 "may be susceptible to future

---

[4] Defendant XCL also asserts, among other things, that the McCardle Property has "geologic and soil units that are highly susceptible to land slippage" [Doc. 88-8 at 20]; the McCardle Property has "medium to high potential for land slippage" [Id.]; "[s]everal land slips pre-existed adjacent to and along Shutler Lane and on the McCardle Property prior to the Pipeline" [Id.]; and the "[m]ovement on these land slips is episodic and will continue to be episodic as the primary cause of reactivation is heavy precipitation" [Id.].

[5] Defendant XCL also states that it "is nevertheless considering additional restoration work pursuant to the Restoration Warranty *without* conceding responsibility for those areas." *See* [Doc. 95 at 7 fn.4].

episodes of debris flow within existing chutes during periods of moderate to heavy runoff." *See* [Doc. 88-8 at 25].

Defendant XCL also argues that the Restoration Warranty's time for compliance for any additional restoration is two (2) years "after completion of construction activities or subsequent installations. . . ." Two (2) years from the completion of construction activities is August 2023. Defendant XCL states that "at no point [has Defendant XCL] ever repudiated the Restoration Warranty, nor confirmed that it did not intend to honor it - if, for example, Areas 7 and 8 are ultimately determined to be XCL's responsibility." *See* [Doc. 95 at 3–4]. Defendant XCL asserts that the record evidence demonstrates "the alternate causation for such issues, as well as XCL's compliance with its obligations, including its intentions to timely honor its warranty obligations to the extent they may still apply and be required." *See* [Id. at 4]. Because a genuine issue of material fact exists regarding any purported breach of contract as to Areas 7 and 8, Defendant XCL argues plaintiffs are not entitled to summary judgment as to those two areas.

Finally, Defendant XCL lastly argues that plaintiffs' Motion fails for another reason – that Defendant XCL has not breached its Restoration Warranty. Defendant XCL asserts that there can be no breach in the Restoration Warranty when it still is within the 2-year restoration window. However, Defendant XCL makes clear that just because it is considering additional work to the McCardle Property does not concede that Defendant XCL's construction activities were the cause of any alleged damage to the McCardle Property. This Court agrees with Defendant XCL that the 2-year restoration period has not lapsed and it is still within the time frame to restore any part of the McCardle Property.

Thus, as of the date of this Order, Defendant XCL is still in the 2-year period under the Restoration Warranty to restore the McCardle Property.

### b. Plaintiffs' Reply in Further Support of Plaintiffs' Motion for Partial Summary Judgment on Certain Breach of Contract Issues [ECF No. 87] [Doc. 98]

In Reply, plaintiffs assert that Defendant XCL offers three (3) arguments against their motion for partial summary judgment:

(1) XCL claims the Plaintiffs have taken their experts' clear and unambiguous admissions about the conditions of Areas 7 & 8 out of context; (2) XCL claims that there are other possible explanations for the admitted condition of Areas 7 & 8, other than the Defendants' massive construction activities; and (3) XCL holds out the possibility that it might yet live up to its contractual obligations to the McCardles.

[Doc. 98 at 1].

With respect to Defendant XCL's first argument, plaintiffs argue they have not taken Defendant XCL's experts out of context but have merely "pointed out what Exponent conceded multiple times." *See* [Id. at 1–3].

As to Defendant XCL's second argument, plaintiffs assert that Defendant XCL has to restore the McCardle Property to its "original condition" based on the plain language of the Perpetual ROW Agreement. *See* [Id. at 3–4]. Plaintiffs state that even though Exponent "says something other than its enormous construction activities (like rain) might have caused some of the damage its experts identify," that argument gets Defendant XCL nowhere given the Perpetual ROW Agreement. Plaintiffs state that the Restoration

Warranty does *not* say: "Grantee shall restore the surface of said lands to as near its original condition as reasonably practical <u>unless it rains and XCL blames the condition of the property on that rain</u>." *See* [Id.].

Finally, plaintiffs point out that "an unfulfilled contractual obligation is the quintessential example of a circumstance that should be addressed by specific performance." *See* [Id. at 4].

### c.   Discussion

Viewing all underlying facts and inferences in the light most favorable to the nonmoving party, this Court finds that plaintiffs' are entitled to summary judgment as it relates to Areas 7 and 8.  This Court agrees with the plaintiffs that the Restoration Warranty does not say "Grantee shall restore the surface of said lands to as near its original condition as reasonably practical <u>unless it rains and XCL blames the condition of the property on that rain</u>."  Rather, the Restoration Warranty requires restoration of any slippage within the construction area.  Accordingly, plaintiffs' Motion for Partial Summary Judgment on Certain Breach of Contract Issues [**Doc. 87**] is hereby **GRANTED**.

## II.   Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment and Memorandum of Law in Support of its Motion for Summary Judgment [Docs. 88 and 89]

In its Memorandum of Law in Support of its Motion for Summary Judgment, Defendant XCL moves this Court to grant summary judgment in its favor as to all claims asserted against it by plaintiffs.

In support, Defendant XCL makes five (5) arguments in support of summary judgment.  First, Defendant XCL argues that plaintiffs' claim for compensatory damages

as to their property is deficient.[6]   *See* [Doc. 89 at 7–9].   Under Federal Rule of Civil

Procedure 26(a), Defendant XCL asserts that plaintiffs have failed to meet their burden of

proof regarding their alleged damages by not providing "a computation of each category

of damages claimed."   Relying on ***Justice v. Pennzoil Co.***, 598 F.2d 1339, 1343 (4th Cir.

1979), Defendant XCL argues that plaintiffs cannot rely on mere speculation or conjecture

with regard to proof of damages.   Defendant XCL states that plaintiffs have "provide[d] no

such computation, nor have they ever, despite the opportunity to do so at any point

throughout the pendency of this matter."   Because there is no evidence by which a jury

could fix an amount to award plaintiffs for these claimed damages, Defendant XCL argues

plaintiffs' claims for compensatory damages to their property should be dismissed as a

matter of law.

Second, Defendant XCL argues they have "an exclusive perpetual free right of

ingress and egress to and from the right of way, including via the additional temporary

workplace."   *See* [Id. at 9–11].   Defendant XCL asserts that because Mr. McCardle allowed

the continued use through at least November 2018, plaintiffs have waived any contentions

against the defendants relating to the use of the access road from August 2018–forward.

In support of this argument, Defendant XCL cites Mr. McCardle's deposition testimony

stating:

---

[6] Defendant XCL notes that the motion for summary judgment is directed to plaintiffs' claims to damages for repair cost or diminution in property value and not to any alleged claim for annoyance and/or inconvenience.   *See* [Doc. 89 at 7, fn.5].

> Well, I gave them a continuation of the contract. . . . [T]he contract ended in
>
> August and I let them go until November to continue to use my access road
>
> and Shutler Lane in order to get to their pipeline to finish their project.

[Doc. 88-4 at 56].   In exchange for permitting the ongoing use by Defendant XCL, Mr. McCardle

> wanted them to keep the road repairs up, and as long as they kept the road
>
> repairs up, I would -- you know, putting gravel down so we can travel and get
>
> in and out the lane, that I was going to allow them to go ahead and continue
>
> to use the access road.

[Id. at 61].   Mr. McCardle further testified that Defendant XCL put down "as much [gravel] as they could."   *See* [Id.].   Because plaintiffs seek to limit the extent of Defendant XCL's easement rights in Count I and II of their Complaint, Defendant XCL seeks this Court to waive any contentions made by plaintiffs relating to the use of the access road from August 2018–forward.

Third, Defendant XCL argues that the Gist of the Action Doctrine bars all tort claims and corresponding damages against them.   Relying on *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 231 W.Va. 577 (2013), Defendant XCL asserts that summary judgment is warranted as to Counts III and V, asserting trespass and property damage because the Gist of the Action Doctrine bars any recovery in tort where the alleged breach is grounded in a contractual relationship.   Defendant XCL states that all four of the *Gaddy* factors compel the conclusion that the Gist of the Action Doctrine precludes plaintiffs' tort claims.   Defendant XCL asserts that "the liability Plaintiffs seek to

13

impose against the Defendants pursuant to Count III and V arises **solely** from the contractual relationship between the parties; that the Defendants' alleged duties breached were grounded in the Agreements; that any liability stems from the Agreements and the express obligations and duties set forth therein; and Counts III and V essentially duplicate the breach of contract claim and the success of the same is indisputably dependant on the success of the Plaintiffs' breach of contract claim." *See* [Id. at 16–17].  Thus, Defendant XCL argues that summary judgment should be granted on plaintiffs' tort claims set forth at Counts III and V.

Moreover, Defendant XCL argues that plaintiffs' punitive damages claim "is derivative and dependent on the viability of their tort claims" and because "those claims have insufficient support to withstand summary judgment", summary judgment is appropriate on plaintiffs' request for punitive damages.  *See* [Id. at 17–19].

Fourth, Defendant XCL asserts that plaintiffs do not have standing to pursue claims relating to Shutler Lane[7] because it is a state-owned road from which they access their property.  *See* [Id. at 19–23].  The WV DOT has confirmed that Shutler Lane is a state road.  The WV DOT issued a permit to "ENTER UPON, UNDER, OVER OR ACROSS THE STATE ROADS OF THE STATE OF WEST VIRGINIA, AS PROVIDED FOR IN §§ 17-16-6, 17-16-9 AND 17-4-8, WEST VIRGINIA CODE, 1931, AS AMENDED."  *See* [Doc. 88-14]. Because plaintiffs admit they do not own Shutler Lane and also admit that Shutler Lane is a West Virginia Department of Highways ("WV DOT") road, Defendant XCL

---

[7]There are four (4) areas affecting Shutler Lane: Area 1 - Shutler Lane Culvert; Area 2 - Shutler Lane Landslide; Area 3 - Slope Failure Adjacent to Shutler Lane; and Area 4 - Slope Failure Below Home and Tractor Shed.  *See* [Doc. 88-7 at 2–3].

argues plaintiffs lack standing without some ownership interest in Shutler Lane and summary judgment is appropriate.

Fifth, because plaintiffs have failed to link their alleged damages to Defendant XCL's conduct, Defendant XCL argues summary judgment must be granted in favor of it on Counts III, IV and V. *See* [Id. at 23–28]. Defendant XCL states that the record "utterly lack[s] required evidence from which causation for their alleged damages may be found." *See* [Id. at 24]. Defendant XCL argues that the evidence presented is merely speculative and self-serving and does rise to the level of reliable evidence to allow a reasonable jury to infer that Defendant XCL's conduct is the cause of plaintiffs' alleged damages.

III.    **Defendant Price Gregory International, Inc. Motion for Summary Judgment and Memorandum of Law in Support of its Motion for Summary Judgment [Docs. 91 and 91-1]**

In support of granting Defendant PGI's Motion for Summary Judgment, Defendant PGI asserts four (4) arguments. First, Defendant PGI argues that as it pertains to the four (4) areas affecting Shutler Lane, plaintiffs lack standing for claims of property damage because they do not own the property and are not charged with its maintenance or care. *See* [Doc. 91-1 at 5–11]. Similarly to Defendant XCL's argument, the WV DOT owns and maintains Shutler Lane. *See* [Doc. 91-8]. Exhibit G to Defendant PGI's Memorandum of Law in Support expressly identifies the four (4) areas of Shutler Lane from which plaintiffs seek damages.

Second, Defendant PGI argues plaintiffs claims for property damage fail for lack of proof of causation. *See* [Doc. 91-1 at 11–13]. Again, similarly to Defendant XCL's argument, Defendant PGI asserts that plaintiffs "only contend that there are now

differences to their property compared to prior to construction but merely speculate and offer self-serving theories as to causation largely contrary to documented, objective, and undisputed evidence." *See* [Id. at 12]. Because there is a "complete lack of any evidence," Defendant PGI seek summary judgment in their favor.

Third, because plaintiffs have "presented absolutely no evidence associated with the value of their property or cost of repair," Defendant PGI argues their claims for compensatory damages as to their property fail as a matter of law and must be dismissed. *See* [Id. at 14–16]. Defendant PGI states that plaintiffs "have not presented a single numerical value as to what their property is worth, beyond what they originally paid for it, or an estimation as to what the cost of repair for that property would be." *See* [Id. at 14]. Because no valuation has been provided, Defendant PGI requests plaintiffs' claims for compensatory damages as it relates to the McCardle Property be dismissed and stricken as a matter of law.

Fourth, relying on ***Fowler v. Kanawha Valley Fine Jewelry & Loan LLC***, 2015 WL 164096, at *6 (S.D. W.Va. Jan. 13, 2015) (Copenhaver, J.), Defendant PGI argues that West Virginia law compels the entry of summary judgment in Defendant PGI's favor because no conduct by Defendant PGI was extreme or egregious bad conduct to warrant an award of punitive damages. Defendant PGI states that Mr. McCardle "readily admitted that PGI did everything that it could to avoid causing any property damage, but that nothing worked." *See* [Doc. 91-3 at 11] (Mr. McCardle stating: "They did everything they could to alleviate it, but it -- nothing worked."). Because plaintiffs have failed to set forth any facts, Defendant PGI argues plaintiffs' punitive damages claims must be dismissed.

**IV.    Plaintiffs' Combined Memorandum in Opposition to Defendants XCL Midstream Operating, LLC's Motion for Summary Judgment [ECF No. 88] and Defendant Price Gregory International, Inc.'s Motion for Summary Judgment [ECF No. 88] [Docs. 96 and 97]**

In response, plaintiffs' advance six (6) arguments in opposition to Defendants XCL and PGI's Motions for Summary Judgment.  They are accurately summarized by plaintiffs as follows:

> The Defendants' argument, advanced by both [Defendant XCL and Defendant PGI] regarding Plaintiffs' claims for compensatory damages fails because the Defendants ignore the relationship between the parties, the terms of the contract between XCL and the Plaintiffs, and the Plaintiffs' claim for specific performance.
>
> XCL's argument regarding the rights granted to it by the *Right of Way and Easement Agreement* ("ROW") depends on an illegitimate request from XCL to ignore completely a separate, valid, and enforceable contract between XCL and the Plaintiffs.
>
> XCL's argument regarding the "Gist of the Action Doctrine" fails to account for the actions of PGI.  Further, XCL fails to account for the issues it has injected into this case through its own experts.
>
> XCL and PGI both argue against the Plaintiffs' claim for punitive damages.  However, what the Defendants did to the Plaintiffs' property was no accident.  They deliberately proceeded to destroy wide swaths of the Plaintiffs' property, despite the obviousness of what they were going to do.

As to the standing issues raised by both XCI and PGI, those arguments also fail. XCL and PGI gloss over the nature of the relationship between the McCardles and Shutler Lane, which is relatively unique. Not only do the McCardles own the property on both sides of the road, Shutler Lane is the McCardles only means of access to their home and nobody else uses the relevant portion of Shutler Lane. Under these facts, standing clearly exists.

[Doc. 96 at 1–2].

With respect to compensatory damages, plaintiffs argue that because plaintiffs "are retired farmers (and a coal miner in Mr. McCardle's case)," the defendants are in a far better position to know how much it would cost to satisfy the contractual obligations. Plaintiffs assert there is no need for them "to come up with a number about future repairs in the face of the fact that the pipeline construction companies who have been out on that very property for years apparently have no idea how much the additional required remediation would cost." *See* [Doc. 96 at 8]. Moreover, plaintiffs assert the Complaint contains a claim for specific performance which is important for two (2) reasons–(1) not even Defendant XCL contends that it is entitled to summary judgment on the specific performance claim; and (2) the specific performance claim is an appropriate recognition of the relative position of the parties. *See* [Doc. 96 at 8].

Plaintiffs argue that Defendant XCL provided a "bizarre argument" asking this Court to nullify the temporary agreement. Plaintiffs assert that Defendant XCL's "deficient argument cannot be rehabilitated by" Mr. McCardle's conduct in allowing the continued use through at least November 2018. *See* [Doc. 96 at 9–10].

18

As to the Gist of the Action Doctrine, plaintiffs state that Defendant XCL's gist-of-the-action argument does not apply to Defendant PGI. Even though plaintiffs assert "that the contracts they have with XCL are more than enough, on their own, to fully support the Plaintiffs' recovery against XCL," plaintiffs ask this Court to deny Defendant XCL's request to entirely strike plaintiffs' tort claims.

## V.    Defendant XCL Midstream Operating, LLC's Reply in Support of its Motion for Summary Judgment [Doc. 100]

In reply, Defendant XCL asserts five (5) responses. First, Defendant XCL argues that plaintiffs fail to read the Perpetual ROW Agreement in conjunction with the 12 Month Row, which this Court has referenced as the Temporary ROW Agreement. *See* [Doc. 100 at 2–4]. Defendant XCL asserts that it is its interpretation "that properly gives effect to all clauses of both Agreements" and is simply asking this Court to "apply fundamental precepts of contract law and construe the Agreements properly to conclude that the [ROW Agreement] governs XCL's access rights after the initial period in the [Temporary ROW Agreement]." *See* [Id. at 4].

Second, Defendant XCL reasserts that the Gist of the Action Doctrine bars plaintiffs' tort and corresponding damages claims. *See* [Id. at 4–6]. Defendant XCL states that because there are no remaining tort claims against Defendant XCL, punitive damages are unavailable as a matter of law under the Gist of the Action Doctrine. *See* [Id. at 5]. And even if this Court were to determine that tort claims against Defendant XCL do survive, plaintiffs do not "make clear what behavior it is that they are contending warrants punitive damages beyond mere alleged 'trespass ... beyond the terms of the contract.'" *See* [Id.]. Defendant XCL further states that plaintiffs Opposition fails to satisfy the high burden of

19

proving punitive damages because it does not set forth one instance of actual malice on behalf of Defendant XCL, nor any conscious, reckless and outrageous indifference to the health, safety and welfare of others.  *See* [Id. at 6].

Third, Defendant XCL states plaintiffs do not have standing to pursue claims to Shutler Lane (i.e., Areas 1 and 2).  *See* [Id. at 7–8].  Defendant XCL asserts that plaintiffs argument that they have standing to personally sue for, and collect damages for Shutler Lane "because they are the 'only ones' to use a particular part of Shutler Lane, which is indisputably a West Virginia Department of Highways road, . . ." fails.  Defendant XCL argues that just because plaintiffs are the "only ones" to use a particular part of Shutler Lane does not mean that "a limited portion of [the] public road does not become private. . . ."  *See* [Id. at 7].

Fourth, Defendant XCL argues that plaintiffs rely on pure speculation to satisfy their burden of proving causation as to Counts III, IV and V.  *See* [Id. at 9–10].  Defendant XCL argues that plaintiffs' "self-serving opinion" cannot be enough to satisfy their burden of proving causation.

Fifth, Defendant XCL asserts it "remains abundantly clear that plaintiffs cannot prove compensatory damages" as to the McCardle Property because they have been unable to quantify property damages.  *See* [Id. at 10–11].  Defendant XCL states that plaintiffs have even "confirmed to this Court that they do not possess the information that they need to establish monetary property damages."  *See* [Id. at 11].

**VI.    Defendant Price Gregory International, Inc.'s Reply in Support of its Motion for Summary Judgment [Doc. 101]**

In reply, Defendant PGI asserts that plaintiffs' Response "fails to address the legal arguments advanced by PGI, fails to address their factual deficiencies, and fails to demonstrate in any capacity as to why PGI's Motion for Summary Judgment should not be granted."  *See* [Doc. 101 at 1].   Defendant PGI also states that rather than focus on Defendant PGI's arguments, plaintiffs' Response "is almost exclusively directed at Defendant XCL. . . ."  *See* [Id.].  Defendant PGI reasserts four (4) arguments in support of its Motion for Summary Judgment.

First, Defendant PGI again argues that plaintiffs lack standing to assert claims associated with the damage to Shutler Lane itself because Shutler Lane is owned and maintained by the State of West Virginia.  *See* [Id. at 2–5].  Defendant PGI states that plaintiffs' Response is completely missing any evidence to suggest that any type of relief either via a jury's award of monetary damages or Order of this Court will redress the damages claimed by plaintiffs to Shutler Lane.  *See* [Id. at 3].

Second, Defendant PGI states plaintiffs' claims for property damage fail for lack of proof of causation.  *See* [Id. at 5–7].  Because plaintiffs "have absolutely no evidence linking any specific activity by PGI to the actual damages that they claim to have suffered," Defendant PGI argues summary judgment is appropriate.  *See* [Id. at 7].

Third, Defendant PGI reasserts that plaintiffs claims for compensatory damages as to their property fail as a matter of law and must be dismissed because plaintiffs have not come forward with some evidence of the amount of damages suffered by them as it specifically relates to PGI's conduct.  *See* [Id. at 7–10].  Defendant PGI also argues that

it was not required to perform the remediation or reclamation on the McCardle Property because there is no contract between Defendant PGI and plaintiffs.

Fourth, because plaintiffs have not established by clear and convincing evidence that defendant PGI's alleged conduct was carried out with "actual malice" or "a conscious, reckless and outrageous indifference to the health, safety and welfare of others," Defendant PGI argues the punitive damages claim must be dismissed. *See* [Id. at 10–13].

<u>**DISCUSSION**</u>

## I.   **Compensatory Damages**

All three parties agree that under West Virginia law, when residential real property is damaged,

> the owner may recover the reasonable cost of repairing it even if the costs exceed its fair market value before the damage.  The owner may also recover the related expenses stemming from the injury, annoyance, inconvenience, and aggravation, and loss of use during the repair period.  If the damage cannot be repaired, then the owner may recover the fair market value of the property before it was damaged, plus the related expenses stemming from the injury, annoyance, inconvenience, and aggravation, and loss of use during the time he has been deprived of his property.

*Brooks v. City of Huntington*, 234 W.Va. 607, 615, 768 S.E.2d 97, 105 (2014).  "The ultimate test of the fitness of a damage award is its capacity to advance the goal of tort damages, which is 'to make the injured party whole again.'" *Id*. (citing *American Serv. Ctr.*

*Assoc. v. Helton*, 867 A.2d 235, 242 (D.C.App. 2005) (quoting *Bell v. Westinghouse Elec. Corp.*, 507 A.2d 548, 555 (D.C. 1986))).

"It has long been the rule in West Virginia that damages cannot be based on speculation, guess or conjecture. *E.g.*, *Spencer v. Steinbrecher*, 152 W.Va. 490, 164 S.E.2d 710 (1968), citing *Rodgers v. Bailey*, 68 W.Va. 186, 69 S.E. 698 (1910)." *Justice v. Pennzoil Co.*, 598 F.2d 1339, 1343 (4th Cir. 1979). "In proving compensatory damages, the standard or measure by which the amount may be ascertained must be fixed with reasonable certainty, otherwise a verdict is not supported and must be set aside." Syl. Pt. 3, *Rodgers*, 68 W.Va. 186, 69 S.E. 698.

In this case, plaintiffs have presented absolutely no evidence associated with the value of their property or cost of repairs. Throughout the record, this Court can find no evidence of plaintiffs presenting a single numerical value as to what their property is worth, beyond what they originally paid for it. This Court cannot send this issue to a jury and have laymen and laywomen look at a photo of allegedly damaged property and put a numerical value to it. Thus, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] and Defendant Price Gregory International, Inc. Motion for Summary Judgment [**Doc. 91**] as both pertain to <u>compensatory damages</u> are hereby **GRANTED**.

## II. Perpetual ROW

To start, this Court is rather perplexed with what Defendant XCL is asking in regards to the Perpetual ROW. Based on the record, the parties entered into two agreements: (1) Right-of-Way Agreement and Easement Agreement [Doc. 88-2], referred throughout as the Perpetual ROW Agreement, and (2) Temporary Road Right-of-Way Agreement

[Doc. 88-3], referred throughout as the Temporary ROW Agreement, both made and entered on August 15, 2017.   Based on plaintiffs' Complaint, the Temporary Road Right-of-Way Agreement is at issue.[8]   *See* [Doc. 1 at 4–5].   Plaintiffs seek declaratory judgment and quiet title, as well as preliminary injunction based on Defendant XCL's continued use of the temporary right-of-way.

> According to the Temporary ROW Agreement, plaintiffs agreed to the following:
>
> [Plaintiffs] grant, sell, convey and warrant unto [Defendant XCL], its successors and assigns a temporary road right-of-way . . . to construct, maintain, alter, repair and use at any time, or from time to time, a temporary access road and necessary appurtenances and/or accessories in support thereof . . . for the purpose of ingress, egress and regress of equipment, materials, and supplies, in the construction of [Defendant XCL's] pipeline(s) and pipeline facilities located on the Premises. . . .

*See* [Doc. 88-3 at 2].   Moreover, at the end of the Temporary ROW Agreement, it states:

> This Agreement, including Exhibit "A" attached hereto, constitutes the entire agreement between the parties and no representations or statements, verbal or written, have been made modifying, adding to, or changing the terms of this Agreement.   This Agreement may be modified only by a *written agreement executed by Grantor and Grantee*.

*See* [Id. at 3] (emphasis added).

---

[8] Contrary to Defendant XCL's assertion that the Perpetual ROW governs the parties' rights and expressly permits its access and use at issue in Counts I and II, this Court believes the Temporary Road Right-of-Way Agreement is at issue.

Defendant XCL argues that its right to use the access road continued perpetually after August 18, 2018, pursuant to the Right-of-Way Agreement and Easement Agreement. *See* [Doc. 89 at 2]. Defendant XCL also relies on Mr. McCardle "allow[ing] the continued use through at least November 2018 after having raised a contention that use of the access road was no longer permitted based upon the [Temporary Road ROW]." *See* [Id. at 2–3]. As both parties state, Mr. McCardle and Defendant XCL tried to negotiate a resolution regarding the use of the access road. Mr. McCardle testified: "I gave them a continuation of the contract . . . . [T]he contract ended in August and I let them go until November [2018] to continue to use my access road and Shutler Lane in order to get to their pipeline to finish their project." *See* [Doc. 88-4 at 154:12–19]. Defendant XCL asserts that consideration was given because in exchange for Defendant XCL to continue to use the access road, Mr. McCardle wanted Defendant XCL "to keep the road repairs up . . . you know, putting gravel down so we can travel and get in and out the lane. . . ." *See* [Id. at 162:10–15].

However, plaintiffs argue, relying on Syl. Pt. 1, ***Parsons v. Halliburton Energy Servs., Inc.***, 237 W.Va. 136, 785 S.E.2d 836 (2016), Mr. McCardle's conduct is not the type of "voluntary relinquishment" of a right required by law. Plaintiffs also argue that Defendant XCL's argument also fails for lack of consideration. Plaintiffs assert that the gravel consideration is not sufficient because Defendant XCL was already required to restore the road under the agreements. *See* [Doc. 96 at 10].

This Court finds that the temporary ROW speaks for itself.  The ROW was and remains temporary.  Accordingly, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] as it pertains to the Temporary Road ROW is **DENIED**.

## III.   The Gist of the Action Doctrine

"The 'gist of the action doctrine' applies where one of the following four factors is present:

> (1) where liability arises solely from the contractual relationship between the parties; (2) where the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love*, 231 W.Va. 577, 586, 746 S.E.2d 568, 577 (2013).  In short, to determine whether a tort claim can be sustained separate from the breach of contract claim, the court must examine 'whether the parties' obligations are defined by the terms of the contract.' *Id.*" *Rodgers v. Southwestern Energy Co.*, 2016 WL 3248437, at *3 (N.D. W.Va. June 13, 2016) (Bailey, J.).  Succinctly stated, whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract.  *Gaddy*, 231 W.Va. at 586, 746 S.E.2d at 577.

Even viewing all underlying facts and inferences in the light most favorable to plaintiffs, this Court finds that the defendants are entitled to summary judgment as it relates

to plaintiffs tort claims against Defendant XCL.  All four (4) of the **_Gaddy_** factors compel this Court to conclude that the Gist of the Action Doctrine precludes plaintiffs' tort claims. First, Defendant XCL and plaintiffs entered into written agreements which conveyed particular property rights to Defendant XCL and those acting on its behalf.  Second, it is these written agreements that underlie all of plaintiffs' allegations in the above-styled case. Third, it is clear from reading plaintiffs' Complaint that they are asking this Court to construe contractual terms to get the relief they are seeking.  Fourth, the tort claims essentially duplicate the breach of contract claims.  Thus, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] as it pertains to <u>the Gist of the Action Doctrine</u> is hereby **GRANTED** as to Counts III and V.

## IV.  Punitive Damages

### A. Contract Claims

Under West Virginia law, it is well established that punitive damages are generally unavailable for breach of contract claims.  *See **Berry v. Nationwide Mut. Fire Ins. Co.**,* 181 W.Va. 168, 175, 381 S.E.2d 367, 374 (1989) ("Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract."); ***Warden v. Bank of Mingo***, 176 W.Va. 60, 65, 341 S.E.2d 679, 684 (1985) ("[P]unitive damages are generally unavailable in pure contract actions."); *see also **Games v. Chesapeake Appalachia, LLC***, 2017 WL 5297948, at *4 (N.D. W.Va. Nov. 13, 2017) (Stamp, J.) ("The plaintiffs cannot plead punitive damages as a stand-alone claim.  And, even if the Court had found that there was any breach of an implied covenant

of fair dealing or an implied duty to market, punitive damages are not an available remedy in an action for breach of contract."  (internal citations omitted)).

As it pertains to punitive damages for plaintiffs' contract claims, both Defendant XCL and Defendant PGI are entitled to summary judgment because punitive damages are unavailable for breach of contract claims in West Virginia.  Thus, summary judgment is **GRANTED** for Defendant XCL and Defendant PGI as it relates to <u>punitive damages for contract claims</u>.

Likewise, attorneys' fees are generally not available for breach of contract claims. ***Mills Wetzel Lands, Inc. v. EQT Prod. Co.***, 2019 WL 286748, at \*7 (N.D. W.Va. Jan. 22, 2019) (Stamp, J.).  Thus, plaintiffs' are not entitled to attorneys' fees.

### B. Tort Claims

West Virginia law regarding punitive damages in tort claims is well-settled.  As stated in Syllabus Point 15 of ***CSX Transportation, Inc. v. Smith***, 229 W.Va. 316, 729 S.E.2d 151 (2012):

> 'In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.'  Syllabus point 4, ***Mayer v. Frobe***, 40 W.Va. 246, 22 S.E. 58 (1895).

Syl. pt. 15, ***id.***  "To sustain an award of punitive damages, a plaintiff must establish, by clear and convincing evidence, that a defendant's conduct was 'with actual malice toward

the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.'" *Kuykendall v. Miller Transporting, Inc.*, 2020 WL 1430469, at *2 (N.D. W.Va. Mar. 23, 2020) (Kleeh, J.) (quoting W.Va. Code § 55-7-29(a)).

Because this Court granted summary judgment as to the tort claims of plaintiffs, punitive damages are not available.  Thus, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] and Defendant Price Gregory International, Inc. Motion for Summary Judgment [**Doc. 91**] as both pertain to <u>punitive damages for plaintiffs' tort claims</u> are hereby **GRANTED**.

## V.   Standing[9]

Under West Virginia law, standing is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (citing Black's Law Dictionary 1413 (7th ed. 1999)).  More specifically,

> [s]tanding ... is comprised of three elements: First, the party ... [attempting to establish standing] must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical.  Second, there must be a causal connection [between] the injury and the conduct forming the basis of the lawsuit.  Third, it must be likely that the injury will be redressed through a favorable decision of the court.

---

[9] Because this Court is sitting pursuant to its diversity jurisdiction authority, it must apply West Virginia substantive law to determine whether plaintiffs have standing in this case.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

*Id.* (citing *Coleman v. Sopher*, 194 W.Va. 90, 95 n.6, 459 S.E.2d 367, 372 n.6 (1995).

*Accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

Furthermore,

[s]tanding does not refer simply to a party's capacity to appear in court. Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents. "Typically, ... the standing inquiry requires careful judicial examination ... to ascertain whether the particular plaintiff is entitles to an adjudication of the particular claims asserted."

*Findley*, 213 W.Va. at 94, 576 S.E.2d at 821 (citing *Int'l Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 77 (1991) (quoting *Allen v. Wright*, 468 U.S. 737 (1984))). "In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue[.]" *Flast v. Cohen*, 392 U.S. 83, 99–100 (1968) (footnote omitted).

The property at issue is Shutler Lane, which is owned and maintained by the State of West Virginia.   *See* [Doc. 91-4 at 2; Doc. 91-3 at 86:24–24; 87:1–2; 87:25–88:1–2 (deposition testimony of Mr. McCardle confirming the WV DOT owns and maintains Shutler Lane); Doc. 91-7 at 14:2–14 (deposition testimony of Mrs. McCardle also confirming the WV DOT owns and maintains Shutler Lane)].

The four areas at issue are as follows: Area 1 - Shutler Lane Culvert; Area 2 - Shutler Lane Slide; Area 3 - Slope Failure Adjacent to Shutler Lane; and Area 4 - Slope Failure below Home & Tractor Shed.  *See* [Doc. 91-4 at 1–2].  Shutler Lane is the "*only means of ingress and egress*" plaintiffs have to the McCardle Property.  *See* [Id. at 2].

The West Virginia Department of Transportation ("WV DOT") has confirmed that Shutler Lane is a state road.  The WV DOT issued a permit (hereinafter referred as "the Permit") "TO ENTER UPON, UNDER, OVER OR ACROSS THE STATE ROADS OF THE STATE OF WEST VIRGINIA, AS PROVIDED FOR IN  §§ 17-16-6, 17-16-9 AND 17-4-8, WEST VIRGINIA CODE, 1931, AS AMENDED."  *See* [Doc. 91-8 at 2].[10]   The Permit expressly references Shutler Lane.  *See generally* [Doc. 91-8].

The Addendum to the Permit does state, however, that the "Applicant shall properly repair and maintain any and all damages that may result to said bridges, highways, shoulders, and ditches from hauling activities of Applicant, its agents, contractors and employees, to as good a condition as when the permit was issued, as determined by the District Engineer of the DIVISION having jurisdiction over the work permitted, or pay damages therefore in the amount to sufficiently restore such bridges, roads, highways, shoulders, and ditches to original condition; and shall reimburse the DIVISION for all inspection costs incurred by it in connection with said work and repairs of such damages and faithfully comply with all terms and conditions of said permits and save harmless the DIVISION and the State of West Virginia from all losses resulting from the conduct of said

---

[10] This Court notes that this Permit was given to Tug Hill Operating LLC.  However, Defendant XCL provided these documents for the above-styled case.

31

work and repairs; then this Bond shall be released; or otherwise will remain in full force and effect." *See* [Id. at 3].

Under the facts and evidence presented, it is apparent plaintiffs do not own Shutler Lane, but instead own the land on both sides and around Shutler Lane. As the pictures indicate, the damages are, in part, on the road itself. *See* [Doc. 97-10]. However, the pictures also indicate that there is damage on the land adjacent to the road–which plaintiffs own. *See* [Doc. 97-13]. As it pertains to the actual road–Shutler Lane–plaintiffs do not have standing because they are not owners of the land. *See **West Virginia Division of Highways v. Mason***, 2018 WL 2192987, at *3 (W.Va. 2018) ("The evidence at trial established that the hedges and tree are located in the State right-of-way on adjacent property owned by someone other than respondent. Because respondent does not own or have a legal interest in the hedges and tree, and therefore, no 'injury-in-fact,' she does not have standing to enjoin petitioner's actions to remove the hedges and tree."); ***Butler v. Price***, 212 W.Va. 450, 454, 574 S.E.2d 782, 786 (2002) (holding appellant lacked standing because he did not have an ownership interest in the property in question); *see also **Skidmore v. Norfolk S. Ry. Co.***, 2019 WL 6793183 (S.D. W.Va. Dec. 12, 2019) (Johnston, C.J.) ("Though she claims that the soil erosion is 'threatening the foundation of her home[,] Plaintiff alleges no facts for the Court to infer that there is existing damage to her home or property as a result of the culvert."). Based on this, this Court finds that plaintiffs do not have standing to recover redress for damages caused to the actual road itself. Plaintiffs allege no facts for this Court to infer that the road is unable to be driven on or that there is a substantial interference merely because the road is damaged. Even if this

Court or a jury were to award damages to plaintiffs for the alleged damages to property not owned by them, plaintiffs would be unable to alleviate the alleged problems because repairs of Shutler Lane is only done by the State of West Virginia. However, plaintiffs are urged to contact the WV DOT about repairing the actual road on Shutler Lane.[11]

As it pertains to the land surrounding Shutler Lane, plaintiffs are owners and can seek redress for such property damage.[12]  Thus, plaintiffs have standing to proceed on damages for the land surrounding Shutler Lane.  For those reasons, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] and Defendant Price Gregory International, Inc. Motion for Summary Judgment [**Doc. 89**] are hereby **GRANTED IN PART** and **DENIED IN PART**.

## V.    Causation

Defendants seek summary judgment on Counts III, IV and V because plaintiffs cannot show evidence of causation for their alleged damages.  The tort and contract claims in this case require plaintiffs to prove that defendants caused the alleged damages and that plaintiffs have, in fact, suffered damages.  *See* ***Rhodes v. E.I. du Pont de Nemours and Co.***, 636 F.3d 88, 94 (4th Cir. 2011).  Without proof of causation, the claims fail as a matter of law.  *Id*. at 96 ("Such a failure of proof renders all facts immaterial.").  To survive summary judgment, proof of causation must amount to more than conclusory allegations

---

[11] Based on documents provided by Defendant XCL, this Court notes that the WV DOT Division of Highways has proposed plans for construction of Shutler Lane.  *See* [Doc. 91-8 at 10].

[12] It is worth noting that plaintiffs' have not once argued that Shutler Lane is closed or not able to be driven on.  It appears that plaintiffs have been able to come and go from their home since the start of the above-styled case.

and "bare allegation[s]." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Because defendants have moved for summary judgment, plaintiffs may not rest on their pleadings, but must come forward with evidence–in the form of affidavits, deposition testimony, answers to interrogatories or admissions–that demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 324.

Here, defendants both argue that plaintiffs only contend that the eight (8) areas are different now than before construction but merely speculate and offer self-serving theories as to causation. This Court agrees with plaintiffs that plaintiffs "have their expert and the Defendants have their own expert." *See* [Doc. 96 at 12]. Fortunately for this Court, it need not resolve which expert is right or wrong.

Moreover, defendants argue that Mr. McCardle's self-serving and non-specific testimony is too vague and speculative to establish evidence of causation to withstand summary judgment. However, this Court disagrees. Although a great deal of civil proof has been surrendered to experts, a landowner may testify as to the damages to his or her own property. *See Virginian Power Co. v. Brotherton*, 90 W.Va. 155, 110 S.E. 546 (1922) ("if a witness have some personal knowledge of the land to be taken, its location, fertility, and adaptability to agriculture, etc., he may give his opinion, its weight and credibility being a *question for the jury*"); *Smithson v. U.S. Fid. & Guarantee Co.*, 411 S.E.2d 850, 186 W.Va. 195 (1991) ("[W]e have allowed the owner of property, both real and personal, to express an opinion on its value."). Mr. McCardle has lived, farmed, and mowed his property for over twenty (20) years. If he were to testify at trial, it is a *question for the jury* to determine the weight and credibility of his opinion.

34

For those reasons, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] and Defendant Price Gregory International, Inc. Motion for Summary Judgment [**Doc. 89**] as they pertain to <u>causation</u> are hereby **DENIED**.

## **CONCLUSION**

For the aforementioned reasons, Plaintiffs' Motion for Partial Summary Judgment on Certain Breach of Contract Issues [**Doc. 87**] is **GRANTED**, Defendant XCL Midstream Operating, LLC's Motion for Summary Judgment [**Doc. 88**] is **GRANTED IN PART AND DENIED IN PART** and Defendant Price Gregory International, Inc. Motion for Summary Judgment [**Doc. 91**] is **GRANTED IN PART AND DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: March 23, 2022.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE